IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIO CESAR OLLER SANCHEZ, :
:
      Petitioner, : CIVIL NO. 3:CV-06-1158
:
vs. : (JUDGE VANASKIE)
:
THOMAS DECKER, :
:
      Respondent. :

## MEMORANDUM

Julio Cesar Oller Sanchez filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2241 on June 8, 2006, challenging his continued detention by the Bureau of Immigration and Customs Enforcement ("BICE"). Sanchez is subject to a final order of removal, and filed this action while judicial review of the removal order was being pursued in the United States Court of Appeals for the Second Circuit. Following several enlargements of time, a response to the petition was filed on September 29, 2006. For the reasons that follow, the petition will be granted to the extent that the petition for writ of habeas corpus will be referred to BICE as a request for review under 8 C.F.R. § 241.13.

I.   BACKGROUND

Petitioner Julio Cesar Oller Sanchez is a native and citizen of the Dominican Republic. He was admitted to the United States at San Juan, Puerto Rico on or about July 20, 1973 as a

lawful permanent resident. (Dkt. Entry 14, Ex. A.) On May 17, 2004, Petitioner was convicted of selling a controlled substance in the New York State Supreme Court. He received a sentence of 2 to 4 years imprisonment. (Id., Ex. B.) Based upon this conviction, BICE commenced removal proceedings on October 21, 2004 by filing a Notice to Appear. (Id., Ex. A.) In the notice Petitioner was charged as removable pursuant to §§ 237(a)(2)(B)(i) and (a)(2)(A)(iii) of the Immigration and Nationality Act ("INA")[1] as an alien convicted of a crime relating to a controlled substance and an alien convicted of an aggravated felony.

On March 7, 2005, an Immigration Judge ("IJ") issued an Order directing that Petitioner be removed from the United States to the Dominican Republic. (Dkt. Entry 14, Ex. C.) Petitioner appealed to the Board of Immigration Appeals ("BIA"), which affirmed the decision of the IJ on August 16, 2005. (Id., Ex. D.) On August 26, 2005, Petitioner filed a Petition for Review and a Motion for Stay of Deportation in the United States Court of Appeals for the Second Circuit. (Id., Ex. E.)

On November 28, 2005, BICE conducted a custody file review and recommended that he remain in custody pending a decision regarding his Motion for Stay of Deportation pending in the Second Circuit. (Id., Ex. F.) In a Decision to Continue Detention issued on December 7, 2005, BICE determined that Petitioner should remain in custody because he posed a threat to

---

[1] These sections are codified at 8 U.S.C. §§ 1227(a)(2)(B)(i) and (a)(2)(A)(iii).

society, and because he was a flight risk since he did not agree with the removal and was currently in the process of challenging the removal order. (Id., Ex. G.) BICE also remarked that a travel document would be readily available to remove Petitioner upon a ruling from the Second Circuit dismissing his stay of removal.[2] As such, a custody determination was issued continuing Petitioner's custody, with the District Director retaining custody jurisdiction. In other words, Petitioner's custody was not referred to the Headquarters Post Order Detention Unit ("HQPDU") at that time. (Id. at 8.)

On June 8, 2006, Petitioner filed the instant habeas corpus petition challenging his continued detention by BICE. At this time his Petition for Review and Motion to Stay Deportation were still pending before the Second Circuit. On September 20, 2006, the Second Circuit denied the Petition for Review because it found it to be lacking an arguable basis in fact or law. (Id., Ex. E.) At the same time, the Second Circuit also denied Petitioner's outstanding

---

[2] The Post Order Custody Review Worksheet indicates that a stay was issued in this case by the Second Circuit on August 29, 2005, several days after the Petition for Review was filed. A docket sheet for the Second Circuit action reveals, however, that no formal Order was ever issued by the Second Circuit ruling on Petitioner's request for a stay until September 20, 2006, when the petition for review and request for stay were denied. It thus appears that if in fact a stay was issued, it was done pursuant to some type of an informal agreement between the United States Attorney for the Southern District of New York and the Second Circuit Court of Appeals. (Doc. 14, Ex. G.)

3

Motion to Stay Deportation, which was still pending on the docket.[3]

## II. DISCUSSION

A final administrative order of removal was entered as to Petitioner on August 16, 2005, when the BIA affirmed the Immigration Judge's ruling. The detention, release and removal of aliens subject to a final order of removal is governed by 8 U.S.C. § 1231. Pursuant to § 1231(a), the Attorney General has ninety (90) days within which to remove an alien from the United States, with the removal period beginning on the latest of the following:

(i)    The date the order of removal becomes administratively final.

(ii)    If the removal order is judicially reviewed <u>and</u> if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(emphasis added).[4] During the 90-day removal period, the Attorney General must detain the alien. 8 U.S.C. § 1231(a)(2). If the alien has not been removed by the conclusion of the 90-day removal period, his detention may be continued, or he may be released under the supervision of the Attorney General. 8 U.S.C. § 1231(a)(3) and (6).

---

[3] Although there appears to have been an agreement to stay removal between the United States Attorney's Office and the Second Circuit, no Order was ever issued by the Second Circuit granting the request for a stay.

[4] Petitioner's current detention is under an immigration process, so the third subpart of § 1231(a)(1)(B) is inapplicable here.

4

Regulations implementing the authority to release persons in Petitioner's status, i.e., as a "Criminal Alien," have been promulgated at 8 C.F.R. § 241.4.

In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the Supreme Court addressed the scenario of indefinite detention of an alien without a likelihood of removal within the reasonably foreseeable future. The <u>Zadvydas</u> Court concluded:

> In our view, the statute (permitting the detention of removable aliens), read in light of the Constitution's demands, limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

533 U.S. at 689. The Court recognized that a period of six months was a presumptively reasonable period of detention. <u>Id</u>. at 701. The Court further found, however, that "[a]fter this six month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." <u>Id</u>. The Court also cautioned, however, that "[t]his six month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Id</u>.[5]

It has been recognized that <u>Zadvydas</u> is inapplicable where detention has been

---

[5] Regulations implementing the <u>Zadvydas</u> holding are codified at 8 C.F.R. § 241.13.

5

prolonged beyond the presumptively reasonable six month period as a result of a judicial stay of removal. See e.g., Obikanye v. INS, 78 Fed. Appx. 769, 772 (2d Cir. 2003); United States ex rel. Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003); Atkinson v. INS, No. Civ. A. 02-705, 2002 WL 1378206, at *2 (E.D. Pa. June 25, 2002); Marcelus v. INS, No. Civ. A. 01-2587, 2002 WL 80301, at *1 (E.D. Pa. Jan. 16, 2002). In the instant case, Respondent maintains that Petitioner's order of removal became administratively final on September 20, 2006, when the Second Circuit dismissed his Petition for Review and denied his Motion for Stay of Deportation. It is on that date that Respondent argues the mandatory ninety (90) day removal period began to run. According to Respondent's calculations, the removal period will therefore end on December 19, 2006 and the six month period will not end until March 20, 2007.

Respondent apparently bases his argument on the premise that Petitioner's removal had been effectively stayed by the Second Circuit as a result of the motion to stay being filed by Petitioner and the fact that Respondent notified the Second Circuit that said motion was not opposed. Contrary to Respondent's belief, this Court has previously held that an informal understanding between a court and government counsel cannot substitute for an order of court. See Oyedeji v. Ashcroft, Civil Action No. 02-2032, slip op. at 8 (M.D. Pa. Dec. 30, 2003)

6

(Vanaskie, C.J.).[6] Congress has decreed that the removal period will be suspended only if "the removal order is judicially reviewed and if a court orders a stay of the removal of the alien . . . ." 8 U.S.C. § 1231(a)(1)(B)(ii), (emphasis added). It is undisputed that no court has issued a stay of the removal of Petitioner. A stay of executive action must be dependant upon a determination that the criteria warranting such extraordinary equitable relief are satisfied. Congress recognized that deferral of deportation was an unacceptable incentive for aliens to file frivolous appeals. See Demore v. Kim, 538 U.S. 510, 123 S.Ct. 1708, 1721 n.14 (2003). A blanket understanding that every alien who petitions for review of a removal order effectively obtains a postponement of deportation is contrary to the legislative scheme. Accordingly, blanket informal understandings between a court and a government attorney cannot substitute for the individualized determination of whether extraordinary equitable relief is warranted in a particular case.

Petitioner's order of removal became administratively final on August 16, 2005, the date BIA affirmed the decision of the IJ. The running of the removal period was not suspended in

---

[6] In the Oyedeji case, Respondents informed the Court that the Second Circuit and the Untied States Attorney's Office have an agreement which "provides that when an alien files a Petition for Review and a request for a stay of removal in the Second Circuit, the Court of Appeals contacts the United States Attorney's Office to obtain an agreement that [BICE] will not remove the alien from the United States until the Second Circuit renders a decision on the Motion for Stay of Removal." Respondents observed that "the Second Circuit, the United States Attorney's Office and [BICE] view the forbearance policy as a binding stay of removal. See Oyedeji, Civil Action No. 3:CV-02-2032, slip op. at 3-4 (August 24, 2004).

this case. The ninety (90) day mandatory period began to run at that point because, while judicial review was sought by Petitioner, the record in the case fails to reveal that any stay was ordered by the Second Circuit. An alien who has filed a petition for review of an order of removal but who has not received a stay of deportation is subject to the provisions of 8 U.S.C. § 1231. Clearly, the mandatory detention period, as well as the six month period have expired. While Petitioner received a custody file review on November 28, 2005, there is no indication that he has had any further review since that time. Jurisdiction to make a determination concerning Petitioner's custody now appears to lie with the HQPDU.[7] It does not appear that Petitioner has filed a written request for release with the HQPDU. Consequently, BICE will be ordered to treat the instant petition as a request for release under 8 C.F.R. § 241.13, and respond to the request within thirty (30) days.[8] If such process is not provided, the Petitioner is

---

[7] Following the December 7, 2005 decision to continue detention, the District Director retained jurisdiction of Petitioner. He was not referred to the HQPDU at that time. (Dkt. Entry 14, Ex. F, Post Order Custody Review Worksheet at 8.) When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the HQPDU for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request to the HQPDU, requesting release and asserting the basis for the contention that there is no significant likelihood that he will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1).

[8] If BICE determines that detention of Petitioner should be continued, Petitioner may, of course, commence an appropriate action under 28 U.S.C. § 2241 challenging the detention decision.

8

to be released.[9]  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[9] Of course, since there is no stay of removal, BICE may now take the action required to effect Petitioner's deportation.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIO CESAR OLLER SANCHEZ,

    Petitioner,

vs.

THOMAS DECKER,

    Respondent.

CIVIL NO. 3:CV-06-1158

(JUDGE VANASKIE)

## ORDER

NOW, THIS 24th DAY OF OCTOBER, 2006, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The petition for a writ of habeas corpus is **GRANTED CONDITIONALLY**.

2. BICE shall undertake a review of Petitioner's custody status in accordance with the above within thirty (30) days from the date of this Order.

3. If BICE fails to provide Petitioner with the process required within thirty (30) days from the date of this Order, Petitioner shall be released from confinement.

4. BICE shall file a status report with this Court no later than **November 30, 2006**.

5.   The Clerk of Court is directed to mark this matter **CLOSED**.

                                                **s/ Thomas I. Vanaskie**
                                                Thomas I. Vanaskie
                                                United States District Judge